United States District Court
Southern District of Texas

**ENTERED**

July 10, 2019

David J. Bradley, Clerk

᾽)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

ASHLEY LUHELLIER            §
                            §
          Plaintiff.        §
                            §
                            §
VS.                         §     CIVIL ACTION NO. 3:18–CV–00281
                            §
OYSTER CREEK, TX, ET AL.    §
                            §
          Defendants.       §

## <u>MEMORANDUM AND RECOMMENDATION</u>

Before the Court is (1) Defendant Oyster Creek's Opposed Motion to Dismiss (Dkt. 16); (2) Defendant Stephen Heckler's Motion to Dismiss for Failure to State a Claim or, Alternatively, to Compel a Reply to Immunity (Dkt. 42); (3) Defendant Village of Surfside Beach's Motion to Dismiss for Failure to State a Claim (Dkt. 43); and (4) Defendant Gary Phillips' Motion to Dismiss for Failure to State a Claim or, Alternatively, to Compel a Reply to Immunity (Dkt. 45). These motions were referred to this Court for report and recommendation pursuant to 28 U.S.C. § 636(b)(1). *See* Dkt. 54.

After reviewing the motions, the responses, and the applicable case law, the Court recommends that the motions be granted and this suit be dismissed.

## BACKGROUND

This civil rights lawsuit arises from a 2017 traffic stop, which resulted in the arrest and detention of Plaintiff Ashley Luhellier ("Luhellier").[1]   Luhellier alleges that during her arrest and detention, she was subjected to unlawful treatment.   The factual allegations contained in the Fourth Amended Complaint are, in their entirety, as follows:

> 15.     On or about July 27, 2017, Plaintiff was a passenger in a vehicle that was pulled over in Brazoria County, Texas. Plaintiff allegedly had an outstanding warrant and was arrested by Heckler, a law enforcement officer for Surfside. During the traffic stop, Heckler unlawfully searched Plaintiff by patting her down on the side of the road without a female officer present. After arriving at Oyster Creek jail, Heckler and unknown officers of Brazoria, Oyster Creek and/or Surfside then unlawfully searched Plaintiff once again, unlawfully held her captive in a shower stall at the jail, and unlawfully ordered her to remove her clothing until nude to change into the jail assigned clothing in front of Heckler, a male. All of these acts were done despite Plaintiff's protests. Further, there was no compelling interest or emergency that could justify the Defendants' acts and omissions. Finally, throughout this time, Heckler and the other officers of Brazoria, Oyster Creek and/or Surfside were acting in accordance with the policies established by Wagner, Brazoria, Phillips, Surfside, and/or Oyster Creek.

Dkt. 34 at 3.   Based on these allegations, Luhellier filed suit against Stephen Heckler ("Officer Heckler"),[2] City of Oyster Creek ("Oyster Creek"), Village of Surfside Beach,

---

[1] At oral argument, Plaintiff's Counsel clarified that the correct spelling of Plaintiff's name is Ashley Luhellier.  Her name is spelled differently in various pleadings submitted in this case.

[2] Officer Heckler is a police officer for the Village of Surfside Beach.

Texas ("Surfside"), and Police Chief Gary Phillips ("Chief Phillips"),[3] asserting claims under 42 U.S.C. § 1983 for alleged violations of her Fourth and Fourteenth Amendment rights, as well as a state law claim for violation of her rights under Article 1.06 of the Texas Code of Criminal Procedure.[4]

Luhellier alleges that her Fourth Amendment and Article 1.06 of the Texas Code of Criminal Procedure rights against unreasonable searches and seizures were violated in two ways: (1) her arrest was not based on probable cause; and (2) she was patted down pursuant to "Defendants' cross-gender policy of allowing male officers to pat down female detainees." Dkt. 34 at 4.  Similarly, Luhellier alleges that her Due Process rights under the Fourteenth Amendment were violated in two ways: (1) "Defendants' cross-gender policy of allowing male officers to conduct what amounts to a strip-search of a female detainee was cruel and unusual punishment against Plaintiff in violation of the Due Process Clause of the Fourteenth Amendment;" and (2) this same "cross gender policy" amounts to a "violation of [her] due process right to bodily privacy." Dkt. 34 at 4–5.  Relying on these same constitutional allegations, Luhellier also asserts several supervisory claims: (1) failure to train; (2) inadequate screening/hiring; and (3) failure to supervise.  Lastly, Luhellier seeks exemplary damages and attorney's fees under 42 U.S.C. § 1988.

Defendants have separately moved to dismiss.

---

[3] Chief Phillips is the Chief of Police for Surfside.

[4] Luhellier also originally sued Brazoria County and Sheriff Charles Wagner, but recently dismissed them from the case.

## LEGAL STANDARDS

**A.    RULE 12(B)(6)**

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a lawsuit for failure to state a claim upon which relief may be granted.  A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8, requiring "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp., v. Twombly*, 550 U.S. 544, 570 (2007)).  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

When conducting its inquiry, the Court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (internal quotation marks and citation omitted). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S at 556 (internal quotation marks and citation omitted).  A motion to dismiss under Rule 12(b)(6) is "viewed with disfavor and is rarely granted." *Shaikh v. Tex. A&M Univ. Coll. of Med.*, 739 F. App'x 215, 218 (5th Cir. 2018) (internal quotation marks and citation omitted).

4

**B.      42 U.S.C. § 1983**

42 U.S.C. § 1983 provides that any person "who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress." Section 1983 does not create new legal rights. Rather, Section 1983 acts as a vehicle for individuals to assert violations of existing federal rights. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.") (internal quotation marks and citation omitted). Therefore, in order to recover under Section 1983, Luhellier must show that she has "been deprived of a right guaranteed by the Constitution or the laws of the United States." *Davis v. Matagorda Cty.*, No. 3:18-CV-00188, 2019 WL 1015341, at *3 (S.D. Tex. Mar. 4, 2019) (citation omitted).

"To establish municipal liability pursuant to [Section] 1983, a plaintiff must demonstrate three elements: a policymaker; an official policy [or custom]; and a violation of constitutional [or other federal] rights whose moving force is the policy or custom." *Shumpert v. City of Tupelo*, 905 F.3d 310, 316 (5th Cir. 2018) (internal quotation marks and citation omitted). It is well established that "[a municipality or other] local government may not be sued under [Section] 1983 for the deprivation of rights guaranteed by the Constitution or federal law inflicted solely by its employees or agents." *ODonnell v. Harris Cty.*, 227 F. Supp. 3d 706, 725 (S.D. Tex. 2016). Hence, "a municipality cannot be held

liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under [Section] 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

## C.   QUALIFIED IMMUNITY

"Qualified immunity shields a government official from liability based on his performance of discretionary functions.   Our two-step qualified[]immunity inquiry determines whether a plaintiff has shown: (1) that the official violated a statutory or constitutional right[;] and (2) that the right was clearly established at the time of the challenged conduct." *Mote v. Walthall*, 902 F.3d 500, 505 (5th Cir. 2018) (internal quotation marks and citations omitted).   Government officials are shielded from liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (collecting cases).   "The 'of which a reasonable person would have known' language does not add to the 'clearly established law' requirement because 'a reasonably competent public official should know the law governing his conduct.'" *Arceneaux v. Klein Indep. Sch. Dist.*, No. H-17-3234, 2018 WL 3496737, at *3 (S.D. Tex. July 20, 2018) (quoting *Kinney v. Weaver*, 367 F.3d 337, 349 (5th Cir. 2004)).   "To say that the law was clearly established, we must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir. 2013) (internal quotation marks and citation omitted).   Generally, the Court exercises its sound discretion "in deciding which of the two prongs of the qualified immunity analysis should

be addressed first in light of the circumstances in the particular case at hand." *Trent v. Wade*, 776 F.3d 368, 377 (5th Cir. 2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

**D.    ARTICLE 1.06 OF THE TEXAS CODE OF CRIMINAL PROCEDURE**

Article 1.06 of the Texas Code of Criminal Procedure provides that:

> The people shall be secure in their persons, houses, papers and possessions from all unreasonable seizures or searches. No warrant to search any place or to seize any person or thing shall issue without describing them as near as may be, nor without probable cause supported by oath or affirmation.

TEX. CRIM. PROC. CODE ANN. § 1.06.  However, the Texas Code of Criminal Procedure does not contain any provision creating a private cause of action based on a violation of Article 1.06.

## DISCUSSION

Luhellier's suit is comprised of constitutional and state law claims against individual defendants and governmental entities.  All of the defendants have moved to dismiss Luhellier's suit, so there is significant overlap between the various motions, responses, and replies.[5]  For the benefit of the parties, the Court offers the following discussion roadmap.

Regarding the constitutional claims, Luhellier has advanced claims under the Fourth and Fourteenth Amendments.  In responding to the motions to dismiss, Luhellier expressly abandons her Fourth Amendment claims.  Thus, below, the Court first takes up the Fourth Amendment abandonment issue.

---

[5] In the interest of clarity, the Court does not bounce between each motion, response, and reply. Instead, the Court references specific motions only to the extent it is necessary.

Next, the Court considers Luhellier's Fourteenth Amendment claims. Both the individual defendants and the governmental entities argue that Luhellier has not actually alleged a constitutional violation. *See, e.g.*, Dkt. 16 at 8 ("Plaintiff has not alleged facts which show that an unconstitutional City policy *caused* an officer to violate Plaintiff's rights"); Dkt. 42 at 6 ("There is no allegation here of any violation of clearly established constitutional rights."); Dkt. 43 at 7 ("the pleadings fail to allege facts sufficient to show a plausible violation of Luhellier's rights under the Fourth and Fourteenth Amendments"); Dkt. 45 at 5–6 ("the pleadings fail to allege facts sufficient to show a plausible violation of Luhellier's rights under the Fourth and Fourteenth Amendments"). The individual defendants also advance qualified immunity defenses, and the governmental entities advance more technical arguments concerning municipal liability. However, if the defendants are correct that Luhellier has not alleged a constitutional violation, the Court need not reach the qualified immunity issue or delve into the more nuanced municipal liability arguments. *See, e.g., Cochran v. City of Deer Park*, 108 F. App'x 129, 131 (5th Cir. 2004) ("The [governmental entities] were properly dismissed, because . . . the complaint failed to state a claim for an underlying federal constitutional violation on which to premise municipal liability.") (citation omitted); *Quives v. Campbell*, 934 F.2d 668, 669 (5th Cir. 1991) ("We hold that [Plaintiff] has failed to state a claim of any constitutional violation and that, hence, we may affirm without reaching the issue of qualified immunity."). As will be explained below, the Court concludes that Luhellier has not alleged a constitutional violation.

After disposing the Fourteenth Amendment claims, the Court addresses the ruling's impact on Luhellier's supervisory claims—i.e., failure to train, inadequate screening/hiring, and failure to supervise.

Lastly, the Court addresses Luhellier's state law claim based on Article 1.06 of the Texas Code of Criminal Procedure and the availability of attorney's fees under 42 U.S.C. § 1988.

## A.   FOURTH AMENDMENT CLAIMS ABANDONED

Luhellier has expressly asserted two claims grounded in the Fourth Amendment. First, she challenges whether Officer Heckler had probable cause to arrest her.  In other words, Luhellier has asserted a false arrest claim.  *See, e.g., Carter v. Diamond URS Huntsville, LLC*, 175 F. Supp. 3d 711, 740 (S.D. Tex. 2016) (recognizing that "[t]he Fourth Amendment right to be free from false arrest" means an "arrest without probable cause") (citation omitted).  Luhellier's second Fourth Amendment claim is straight forward: she simply contends that it was unreasonable for Officer Heckler, a male, to conduct a roadside pat down search on her, a female.

In his motion to dismiss, Officer Heckler specifically challenges whether Luhellier has alleged sufficient facts to support a false arrest claim, and whether the alleged roadside pat down search can be considered unreasonable under current law. *See* Dkt. 42 at 3–6.  In response to Officer Heckler's strong arguments, Luhellier "concedes that at this time, it is premature to bring a claim in regards to the false arrest and illegal pat down claims." Dkt. 50 at 4.

"When a plaintiff fails to defend or pursue a claim in response to a motion to dismiss . . . , the claim is deemed abandoned." *Hernandez v. City of Grand Prairie Tex.*, No. 3:16-CV-2432-L, 2017 WL 4098596, at *13 (N.D. Tex. Sept. 15, 2017) (citation omitted). *See also Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (explaining that plaintiff's "failure to pursue [her] claim beyond her complaint constituted abandonment") (citation omitted). Because Luhellier conceded the impropriety of her Fourth Amendment claims, they are deemed abandoned and are no longer before the Court.

## B.   FOURTEENTH AMENDMENT CLAIMS

### 1.   Cruel and Unusual Punishment

Luhellier contends that she was subjected to "cruel and unusual punishment . . . in violation of the Due Process Clause of the Fourteenth Amendment" when she was ordered by Officer Heckler and other unknown officers to undress and change into a jail uniform.[6] Dkt. 34 at 4. Oyster Creek moved to dismiss this claim, noting that "cruel and unusual punishment" is a claim governed by the Eighth Amendment, which applies only to

---

[6] In the Fourth Amended Complaint, Luhellier contends that once she was arrested, the acts that took place at the Oyster Creek Jail were done by Officer Heckler, in conjunction with "unknown officers of Brazoria, Oyster Creek and/or Surfside." Dkt. 34 at 3. In all of her response briefs, however, Luhellier blithely asserts that Officer Heckler was alone. *See, e.g.*, Dkt. 23 at 7 ("Plaintiff has alleged that . . . Stephen Heckler (a male) required Plaintiff (a female) to strip naked in a shower, *with only Plaintiff and Heckler present*.") (emphasis added); Dkt. 50 at 7 ("Heckler (a male) required Plaintiff (a female) to strip naked in a shower stall, with no other officer present"); Dkt. 51 at 4 ("Plaintiff has alleged that . . . Stephen Heckler, (a male) required Plaintiff (a female) to strip naked in a shower, *with only Plaintiff and Heckler present*.") (emphasis added); Dkt. 51 at 4 ("Plaintiff has alleged that . . . Stephen Heckler, (a male) required Plaintiff (a female) to strip naked in a shower, *with only Plaintiff and Heckler present*.") (emphasis added). The Court ignores this new inconsistent factual allegation. *See Wicker v. Seterus, Inc.*, No. EP-15-CV-331-KC, 2016 WL 2622017, at *8 n.7 (W.D. Tex. May 5, 2016) ("To the extent that this allegation is inconsistent with the facts pleaded by Plaintiff in the Complaint, the Court does not consider this allegation.") (citations omitted).

convicted individuals, as opposed to pretrial detainees. Dkt. 16 at 8. In response to Oyster Creek, Luhellier explained that "[u]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt," and her claim is that via the cross-gender so called "strip-search," she "was subjected to punishment as a pretrial detainee, and such conduct was a violation of her rights under the Due Process Clause." Dkt 23 at 9 (citation omitted). In reply, Oyster Creek argues that Luhellier's claim still fails under the Fourteenth Amendment because "she has not alleged any fact which shows she was punished." Dkt. 24 at 4.

"In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, . . . the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "A restriction is not punitive if it is reasonably related to a legitimate governmental objective, such as maintaining jail security." *Wills v. Dinkins*, 582 F. App'x 520, 521 (5th Cir. 2014) (internal quotation marks and citation omitted). The United States Supreme Court has found that "[c]orrectional officials have a significant interest in conducting a thorough search as a standard part of the intake process." *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 330 (2012). The Fifth Circuit has explained that *Florence* "set up a high hurdle for inmates challenging the constitutionality of searches," because the *Florence* court concluded that "the burden is on the plaintiff to prove with substantial evidence that the challenged search does not advance a legitimate penological interest." *Mabry v. Lee Cty.*, 849 F.3d 232, 236

(5th Cir. 2017).  And, importantly, "[c]ourts should ordinarily defer to the expertise of correctional officials."  *Wills*, 582 F. App'x at 521 (citation omitted).

In this case, Luhellier has not alleged any facts suggesting or implying that the search she was subjected to was anything more than a standard part of the jail intake process.  Indeed, she specifically acknowledges that the search was done in conjunction with her changing into jail assigned clothing.  As explained in *Bell*, "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" 441 U.S. at 539.  Luhellier has not offered any facts that amount to, or even suggest, the existence of "more."  Thus, the Court finds that Luhellier has failed to state a claim for cruel and unusual punishment under the Fourteenth Amendment, and this claim should be dismissed.

## 2.  Bodily Privacy

Luhellier also alleges that "Defendants' cross-gender policy of allowing male officers to observe from a close distance, a female pretrial detainee that they have ordered to become nude was a violation of Plaintiff's due process right to bodily privacy."[7]  Dkt. 34 at 5.  In moving to dismiss this claim, defendants argue that as a pretrial detainee,

---

[7] In advancing this argument, Luhellier specifically references only the Fourteenth Amendment. However, this type of claim, as was considered in *Florence*, is typically brought under both the Fourth and Fourteenth Amendments. *See, e.g.*, 566 U.S. at 339 (explaining that "[t]he Fourth and Fourteenth Amendments do not require adoption of the framework of rules petitioner proposes"). Regardless of which constitutional amendment is referenced, the Court's ultimate inquiry concerns the "balance between inmate privacy and the needs of the institutions." *Id.*  Thus, the Court's finding as to bodily privacy under the Fourteenth Amendment would apply with equal force if Luhellier had brought this particular claim under the Fourth Amendment.

Luhellier's right to bodily privacy is circumscribed by the jail's penological interests, and there is no allegation of any violation of a clearly established constitutional right.

"[P]risoners have a minimal right to bodily privacy." *Mitchell v. Quarterman*, 515 F. App'x 244, 247 (5th Cir. 2012) (citing *Oliver v. Scott*, 276 F.3d 736, 744–45 (5th Cir. 2002)). "[P]retrial detainee[s]," such as Luhellier, "ha[ve] at least the same right to bodily privacy as a prisoner." *Byrd v. Maricopa Cty. Bd. of Supervisors*, 845 F.3d 919, 923 (9th Cir. 2017) (citation omitted). "Inside prison walls, of course, the Constitution may tolerate a regulation restricting a constitutional right that, outside prison walls, would be intolerable. Still, it is well-settled that a restrictive prison regulation is permissible only if it is reasonably related to legitimate penological interests, and is not an exaggerated response to those objectives." *Mitchell*, 515 F. App'x at 247 (internal quotation marks and citations omitted).

Boiled down to its essence, Luhellier's claim in this case is that it is constitutionally impermissible to have a male officer force a female pretrial detainee to strip naked and change into prison garb while he watches. In evaluating this claim, the Court is mindful that cross-sex monitoring "serve[s] a function beyond the infliction of pain." *Johnson v. Phelan*, 69 F.3d 144, 147 (7th Cir. 1995). For starters, it promotes the "efficient deployment of staff." *Id.* If a jail must have a dedicated group of guards of one sex available to view prisoners of the opposite sex, it is likely that more guards must be hired to handle such situations. That is oftentimes unrealistic and extremely expensive. Additionally, "cross-sex monitoring reduces the need for prisons to make sex a criterion of

employment, and therefore reduces the potential for conflict with Title VII and the equal protection clause." *Id.*

To this end, the Fifth Circuit "has consistently held that there is a reasonable relation between prison cross-sex monitoring policies and the legitimate penological interests of prison safety and equal employment opportunity." *Mitchell*, 515 F. App'x at 247 (citing *Oliver*, 276 F.3d at 743–47). *See also Soto v. City of Haltom City*, 106 F. App'x 903, 905 (5th Cir. 2004) ("Even if the jail had a policy of staffing a lone male jailer, . . . the Constitution does not require jails that house female detainees either to staff more than one jailer at a time or to staff a female jailer.") (citation omitted).  Moreover, "[t]he Supreme Court made clear in [*Florence*] that '[c]orrectional officials have a legitimate interest, indeed a responsibility, to ensure that jails are not made less secure by reason of what new detainees may carry in [or] on their bodies.'" *Moore v. City of Grand Prairie*, No. 4:12-CV-624-A, 2014 WL 631040, at *5 (N.D. Tex. Feb. 18, 2014) (quoting 566 U.S. at 322).

Not surprisingly, the Fifth Circuit has repeatedly held that strip searches and monitoring performed by members of the opposite sex are constitutionally permissible. *See, e.g., McCreary v. Richardson*, 738 F.3d 651, 658–59 (5th Cir. 2013) (strip searches carried out in the presence of prison employees of the opposite sex are not unconstitutional); *Mitchell*, 515 F. App'x at 247 (constitutionally permissible for female guards to monitor male inmates while the inmates shower and use the restroom); *Oliver*, 276 F.3d at 744–46 (same); *Letcher v. Turner*, 968 F.2d 508, 510 (5th Cir. 1992) ("there is no basis for Lechter's claim of a constitutional violation due to the presence of female guards during the strip search"); *Barnett v. Collins*, 940 F.2d 1530 (5th Cir. 1991)

(unpublished) (upholding use of female guards in guard towers giving full view of male inmates taking showers); *Hicks v. Corrs. Corp. Of Am.*, No. 10-020, 2015 WL 3622534, at *3 (W.D. La. June 9, 2015) ("jurisprudence contemplating female correctional officers actually participating in strip searches and/or viewing showers or strip searches has upheld the right of prisons to utilize female prison employees for these purposes") (citation omitted).[8]

As explained above, the United States Supreme Court and courts in the Fifth Circuit have repeatedly found that jails have a substantial interest in thoroughly searching detainees as a standard part the jail intake process. Luhellier has not alleged any facts suggesting or implying that the search she was subjected to "d[id] not advance a legitimate penological interest," *Mabry*, 849 F.3d at 236, or that the search amounted to an "exaggerated" response to the jail's penological interest.[9] *Florence*, 566 U.S. at 330

---

[8] All the Fifth Circuit cases addressing the constitutionality of opposite sex monitoring involve female correction officers searching or viewing male prisoners. None provide the exact scenario presented by the facts of this case: a male officer viewing a female inmate. But that is a distinction without a difference. If male prisoners are not entitled to prevent female guards from watching them undress as part of the intake process, it logically follows that female prisoners may not preclude male guards from viewing them naked under the same circumstances.

[9] These facts distinguish Luhellier's case from *Moore v. Carwell*, 168 F.3d 234, 237 (5th Cir. 1999), in which the Fifth Circuit found that Moore, a prisoner, could be entitled to relief under the Fourth Amendment based on his allegation that a female prison officer subjected him to multiple strip and body cavity searches "despite the absence of emergency or extraordinary circumstances." At first blush, *Moore* may seem to be at odds with the overwhelming consensus of authority described above. However, a few months after issuing *Moore*, the Fifth Circuit explained that *Moore* was a case "in which we held that Fourth Amendment rights might be violated if a female *unnecessarily* strip-searched [Moore]." *McKenzie v. Johnson*, 204 F.3d 1115, 1999 WL 1328074 at 1 n.1 (5th Cir. 1999) (emphasis added). In other words, *Moore* stands for the unsurprising proposition that cross gender strip and cavity searches carried out in the absence of a legitimate penological interest—i.e., unnecessary searches—may constitute a constitutional violation. Luhellier has not alleged that the search involved in this case was unnecessary and, given that the search was conducted as a part of the jail intake process, nor could she. *See Florence*, 566 U.S. at

(citation omitted).  Notably, there are no allegations that any law enforcement officer made any sexual comments to Luhellier, gawked at her, or tried to touch her.  There are also no allegations that the Luhellier was ordered by male law enforcement officers to strip and change clothing simply to advance the officers' prurient interests.  Having failed to offer any factual allegations that the presence of male guards during the intake process did not advance a legitimate penological interest, Luhellier has failed to state a claim to relief that is plausible on its face.  Consequently, Luhellier's bodily privacy claim, whether brought under the Fourteenth or Fourth Amendment, should be dismissed.

## C.    SUPERVISORY CONSTITUTIONAL CLAIMS

Luhellier advances several supervisory claims that are dependent on her successful allegation of a constitutional violation.  For example, based on a supervisory liability theory, Luhellier has sued Chief Phillips, who was not personally involved in her arrest or search.  Because the Court has found that Luhellier's constitutional rights have not been violated, any claim for supervisor liability against Chief Phillips must be dismissed.  *See Pena v. Givens*, 637 F. App'x 775, 785 (5th Cir. 2015) ("Supervisory liability requires a constitutional violation by a subordinate.").  Similarly, Luhellier's failure to train and inadequate screening/hiring claims must also be dismissed.  *See Romero v. City of Grapevine*, 888 F.3d 170, 178 (5th Cir. 2018) (explaining that because the plaintiff "failed to demonstrate [a constitutional violation], her claims against the City and [Chief of Police]

---

330 (explaining that jails "have a significant interest in conducting a thorough search as a standard part of the intake process").

for failure to train and inadequate screening/hiring" were properly dismissed) (citation omitted).

**D.     TEXAS STATE LAW CLAIM**

Lastly, Luhellier specifically identifies only one state law claim in her Fourth Amended Complaint.  She contends that her rights against unreasonable searches and seizures under Article 1.06 of the Texas Code of Criminal Procedure were violated.  In his motion to dismiss, Officer Heckler argues that this claim must fail because "[t]here is no provision anywhere in the Code of Criminal Procedure for any recovery of damages against officers who are shown to have violated Article 1.06." Dkt. 42 at 8.  In other words, Officer Heckler argues the Texas Code of Criminal Procedure does not create a private cause of action against officers for violation of Article 1.06.

In response to Officer Heckler's argument, Luhellier avers that "it was not only a violation of the United States Constitution, but the Texas Constitution for Officer Heckler to have engaged in a cross-gender strip search without any exigent circumstances."[10] Dkt. 50 at 7.  Luhellier goes on to specifically reference only amendments in the United States Constitution.  Importantly, Luhellier has not cited any authority for the proposition that Article 1.06 of the Texas Code of Criminal Procedure creates a private cause of action.

Under Texas law, "causes of action may be implied only when a legislative intent to do so appears in the statute as written." *Brown v. De La Cruz*, 156 S.W.3d 560, 567 (Tex. 2004).  Thus, the Court has scoured the Texas Code of Criminal Procedure in search

---

[10] Although Luhellier references the Texas Constitution in her response, she does not reference the Texas Constitution in her Fourth Amended Complaint.

of some indication that the legislature intended for Article 1.06 to create a private cause of action. Unfortunately, the Court finds no such support. In light of this fact, and Luhellier's absolute failure to offer any authority in support of her claim, the Court finds that Luhellier's state law claim under Article 1.06 of the Texas Code of Criminal Procedure must be dismissed.

"Having dismissed [Luhellier's] . . . federal and pendent state law claims, which arose from the same nucleus of facts as the federal claims, [Luhellier] cannot maintain an action for attorney's fees under 42 U.S.C. § 1988." *Shipley v. Fincher*, No. 6:04-CV-059-C, 2004 WL 2599350, at *5 (N.D. Tex. Nov. 12, 2004) (citing *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 551 (5th Cir. 2003)). Accordingly, Luhellier's claims under 42 U.S.C. § 1988 must also be dismissed for failure to state a claim

## CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Defendant Oyster Creek's Opposed Motion to Dismiss (Dkt. 16) be **GRANTED**; Defendant Stephen Heckler's Motion to Dismiss for Failure to State a Claim or, Alternatively, to Compel a Reply to Immunity (Dkt. 42) be **GRANTED**; Defendant Village of Surfside Beach's Motion to Dismiss for failure to State a Claim (Dkt. 43) be **GRANTED**; Defendant Gary Phillips' Motion to Dismiss for Failure to State a Claim or, Alternatively, to Compel a Reply to Immunity (Dkt. 45) be **GRANTED**; and Luhellier's suit be **DISMISSED for failure to state a claim**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections

pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 10th day of July, 2019.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE